**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DOREEN WOODWARD, Individually and as Administrator of the Estate of John David Woodward, Jr., deceased, and as Parent and Natural Guardian of E.W., a Minor** | **:** | **CIVIL ACTION** |
| **v.** | **:** | |
| **CHRISTOPHER BASHORE, Individually and in his Capacity as West Goshen Township Manager, WEST GOSHEN TOWNSHIP, and WEST GOSHEN TOWNSHIP BOARD OF DIRECTORS** | **:** | **NO. 23-5126** |

**MEMORANDUM OPINION**

**Savage, J.** **June 25, 2024**

One week after West Goshen Township Manager, Christopher Bashore, accused him of fraud for having approved unauthorized time off for certain township employees, placed him on leave, and threatened to fire him, John David Woodward committed suicide. Doreen Woodward, administrator of her husband's estate and as parent and natural guardian of her daughter, brings wrongful death and survival claims under the Fourteenth Amendment Due Process Clause against Bashore, West Goshen Township, and the West Goshen Township Board of Directors based on state-created danger and municipal liability theories.[1]

The defendants move to dismiss. They argue that the plaintiff fails to plead plausible state-created danger and municipal liability causes of action, and that the claims

---

[1] The Second Amended Complaint asserted claims against all defendants under Pennsylvania law for negligent infliction of emotional distress and intentional infliction of emotional distress in Counts I, II, III, and IV. Second Am. Compl., ECF No. 10. The plaintiff has withdrawn the state law claims, leaving only the constitutional claims. Pl.'s Mem. of L. in Opp'n to Defs.' Mot. to Dismiss at 5, ECF No. 16.

arising out of Woodward's scope of employment are barred by the Workers' Compensation Act.[2]

We conclude that the plaintiff has alleged enough facts to state a state-created danger cause of action. She has not stated a cause of action for municipal liability. Therefore, we shall grant the motion in part and deny it in part.

**Facts**

The facts are recited from the Second Amended Complaint. We accept them as true and draw all reasonable inferences from them in favor of the plaintiff.

Woodward was the Director of Public Works for West Goshen Township.[3] He was responsible for the township's public vehicles and facilities, and he managed thirty employees.[4] Christopher Bashore was the Township Manager.

At a July 20, 2023 meeting, Bashore placed Woodward and three township superintendents under his supervision on unpaid administrative leave for carrying out a policy referred to as "squirrel time."[5] The unwritten policy credited employees who were required to work when township offices were closed due to inclement weather with time off to be used at a later date.[6]

In the meeting, Bashore "scream[ed]" at Woodward and the three superintendents, warning that "people go to jail for these things" and "it's payroll fraud and all previous state audits are now fraud."[7] Woodward was "distraught, upset, angry, confused, and

---

[2] Br. in Supp. of Mot. to Dismiss Second Am. Compl. at 8, 13, 18, ECF No. 15-2 ["Mot. to Dismiss"].

[3] Second Am. Compl. ¶¶ 15-16.

[4] *Id.* ¶ 10.

[5] *Id.* ¶¶ 17, 18, 20.

[6] *Id.* ¶ 21.

[7] *Id.* ¶ 29.

concerned" about being placed on unpaid leave.[8] He was "in a vulnerable emotional and psychological condition."[9]

Woodward and the superintendents informed Bashore that the previous Township Manager and a Board of Supervisors member had implemented the policy.[10] Bashore told them he hired a law firm to investigate.[11] He prohibited Woodward and the superintendents from speaking to one another during the investigation. Each "believed they were just 'waiting around to be fired.'"[12]

On Friday, July 28, 2023, Woodward and the superintendents had not been informed of the status of the investigation. Woodward died by suicide that night. He left a note stating, "I can't take any more of this waiting around to be fired from a job that was my life."[13] The following Monday, the superintendents were instructed to return to work.[14]

**Standard of Review**

To survive a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

---

[8] *Id.* ¶ 127.

[9] *Id.* ¶ 127.

[10] *Id.* ¶ 24.

[11] *Id.* ¶¶ 35, 38.

[12] *Id.* ¶ 41.

[13] *Id.* ¶ 51.

[14] *Id.* ¶ 52.

A conclusory recitation of the elements of a cause of action is not sufficient. *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008). The plaintiff must allege facts necessary to make out each element. *Id.* (quoting *Twombly*, 550 U.S. at 563 n.8). In other words, the complaint must contain facts which support a conclusion that a cause of action can be established.

In considering a motion to dismiss under Rule 12(b)(6), we first separate the factual and legal elements of a claim, accepting the well-pleaded facts as true and disregarding legal conclusions. *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). Then, we determine whether the alleged facts make out a plausible claim for relief. *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679). All well-pleaded allegations in the complaint are accepted as true and interpreted in the light most favorable to the plaintiff, and all inferences are drawn in the plaintiff's favor. *See McTernan v. City of York*, 577 F.3d 521, 526 (3d Cir. 2009) (quoting *Schrob v. Catterson*, 948 F.2d 1402, 1408 (3d Cir. 1991)).

**Analysis**

*Section 1983: State-Created Danger*

With respect to the state-created danger claim, the plaintiff alleges that Bashore[15] violated Woodward's right to bodily integrity and human dignity when he "attack[ed] [him] with false accusations, place[d] him on unpaid leave, threaten[ed] termination of employment, and threaten[ed] potential jail time without completing an investigation."[16] She contends he exposed Woodward to "great risk of self-harm and/or suicide."[17] As a

[15] In Count IV, the plaintiff also brings a state-created danger claim against West Goshen Township and the Board of Supervisors based on the same factual allegations.

[16] Second Am. Compl. ¶ 119.

[17] *Id.* ¶ 128.

result, Woodward suffered fatal injuries.[18]

The Due Process Clause of the Fourteenth Amendment protects only against harm caused by state actors. It does not impose an affirmative obligation upon the states to protect persons from private actors or themselves. *Morrow v. Balaski*, 719 F.3d 160, 167 (3d Cir. 2013); *Sanford v. Stiles*, 456 F.3d 298, 303-04 (3d Cir. 2006); *see also Byrne v. Springfield Sch. Dist.*, No. CV 21-3199, 2021 WL 4847804, at *14 (E.D. Pa. Oct. 14, 2021) (citing *Lansberry v. Altoona Area Sch. Dist.*, 356 F. Supp. 3d 486, 503 (W.D. Pa. 2018). There are two exceptions. The state may be liable for injury caused by a private actor where there is a "special relationship" imposing upon the state a duty to protect the plaintiff from the injury or where the state actor created the danger that resulted in the injury. *Morrow,* 719 F.3d at 167-68 (citing *DeShaney v. Winnegbago Cnty. Dep't of Social Services*, 489 U.S. 189, 199-200 (1989); and citing *Kneipp v. Tedder*, 95 F.3d 1199, 1213 (3d Cir. 1996)).

The plaintiff invokes the state-created danger exception. She does not assert a special relationship. Nor could she. The special-relationship exception arises only where the person harmed is in the physical custody of the state. *D.R. v. Middle Bucks Area Vocational Tech. Sch.,* 972 F. 2d 1364, 1370 (3d. Cir. 1992).

To state a cause of action for state-created danger, the plaintiff must plead facts establishing four elements: (1) Woodward's suicide was foreseeable and fairly direct; (2) Bashore acted with a degree of culpability that shocks the conscience; (3) the relationship between Bashore and Woodward was such that Woodward was a foreseeable victim of

[18] *Id.* ¶ 145.

Bashore's acts;[19] and (4) Bashore affirmatively used his authority in a way that created a danger to Woodward or rendered him more vulnerable to danger than if he had not acted at all. *Morrow*, 719 F.3d at 177 (citing *Bright v. Westmoreland Cnty.*, 443 F.3d 276, 281 (3d Cir. 2006)).

The plaintiff contends that Bashore created a danger when he placed Woodward on unpaid leave and threatened jail without first investigating while knowing that he would "suffer extreme emotional and psychological distress."[20] She alleges that despite knowing that Woodward relied on his employment to send his daughter to college the next year and was a couple of years away from pension eligibility, Bashore "escalate[d] the situation by threatening [him] him with potential incarceration."[21] She also alleges that when Bashore held a meeting with Woodward and three other superintendents on July 20, 2023, he "knew or had reason to know …that Mr. Woodward was distraught, upset, angry, confused, and concerned about his ability to provide for his family due to being placed on unpaid leave and that Mr. Woodward was in a vulnerable emotional and/or psychological condition."[22]

<u>Foreseeable and Fairly Direct</u>

A plaintiff must allege that the state actor knew or was aware of a "sufficiently concrete" risk of harm. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 238 (3d Cir. 2008).

---

[19] The state-created danger theory of liability requires that the plaintiff be a foreseeable victim of the defendant's acts, or a "discrete plaintiff." In other words, the plaintiff may be an individual knowingly placed in harm's way or a member of an identifiable and discrete class of persons subject to the harm. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 913-14 (3d Cir. 1997). "[D]epending on the facts of a particular case, a 'discrete plaintiff' may mean a specific person or a specific class of persons." *Id.* at 913.

[20] Second Am. Compl. ¶ 121.

[21] *Id.* ¶ 129.

[22] *Id.* ¶ 128.

Foreseeability is viewed from the state actor's perspective. *See L.R. v. Sch. Dist. of Philadelphia*, 836 F. 3d 235, 245 (3d Cir. 2017). The state actor must have perceived the potential harm.

The Township argues that the plaintiff has not alleged facts showing that the harm was foreseeable. It contends the Second Amended Complaint does not allege facts showing that Bashore had actual knowledge that Woodward was capable of self-inflicted harm or had mental health or psychological problems.[23] The plaintiff counters that the allegations that Woodward was "distraught, upset, angry, confused" and "in a vulnerable emotional and/or psychological condition"[24] during the July 20, 2023, meeting shows that it was foresseable that he would commit suicide.[25]

The alleged facts showing Woodward's vulnerability and apparent reaction to Bashore's rant are scant. Nonetheless, they are enough to invite discovery to determine what transpired at the meeting, what the others at the meeting observed about Woodward's emotional and psychological conditions, how Woodward reacted, what Bashore knew about Woodward before the meeting, and what signs of vulnerability he displayed. Whether Bashore knew of the "sufficiently concrete" risk of self-harm can only be assessed then. We cannot conclude that discovery will not reveal evidence that Woodward's act of self-harm was foreseeable and Bashore knew it.

<u>Shocks the Conscience</u>

Only government abuse of power that "shocks the conscience" violates the Due Process clause. *Steele v. Cicchi*, 855 F.3d 494, 502 (3d Cir. 2017).

---

[23] Mot. to Dismiss at 10.

[24] Second Am. Compl. ¶ 127.

[25] Resp. at 9.

What constitutes conscience-shocking conduct depends on the time the state actor had to deliberate before acting. *Johnson v. City of Phila.*, 975 F.3d 394, 401 (3d Cir. 2020) (explaining the levels of culpability—intent to cause harm, conscious disregard of a great risk of serious harm, and deliberate indifference). Where the actor must make a snap judgment in a "hyperpressurized environment," liability attaches only if he intended to cause harm to the victim. *Johnson v. City of Philadelphia*, 975 F.3d 394, 401 (3d Cir. 2020) (quoting *Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017)). Where the state actor acts in "hurried deliberation," he is liable if he consciously disregarded a great risk of serious harm. *Sauers*, 905 F.3d at 717 (quoting *Haberle v. Troxell*, 885 F.3d 170, 177 (3d Cir. 2018)). Where the state actor has time to make an "unhurried judgment," the test is deliberate indifference. *Johnson*, 975 F.3d at 401 (quoting *Kedra,* 876 F.3d at 437). In that case, the state actor must have shown a "conscious disregard of a substantial risk of serious harm." *Vargas v. City of Philadelphia*, 873 F.3d 962, 963 (3d Cir. 2015).

Bashore had no need to act without deliberation. Before he confronted Woodward about his alleged authorization of the "squirrel time" policy, he had time to decide what to do. He had engaged a law firm to conduct an investigation that was to take only a week. Hence, his culpability is measured by the deliberate indifference standard.

Deliberate indifference falls between intent and negligence. *Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 n.10 (3d Cir. 1997)). Deliberate indifference is the conscious disregard of a "substantial risk of serious harm," or "a willingness to ignore a foreseeable danger or risk." *Kedra v. Schroeter*, 876 F.3d 424, 437 (3d Cir. 2017) (quoting *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 910 (3d Cir. 1997)).

The Township argues that Bashore and the Board of Supervisors could not have acted with deliberate indifference to a risk of which they were unaware—Woodward's risk of suicide. The plaintiff contends that Bashore acted precipitously in putting Woodward on unpaid leave and leading him to believe he would be fired before knowing the results of the investigation.[26] She also argues that he was aware of Woodward's risk of self-harm.

If Bashore knew of Woodward's vulnerable condition and acted anyway, his conduct could be considered severe enough to shock the conscience.

Monell *Liability - Failure to Train*

A municipality may be liable under § 1983 only when a plaintiff can demonstrate that the municipality itself, through the implementation of a municipal policy or custom, causes a constitutional violation. *Estate of Roman v. City of Newark,* 914 F.3d 789, 798 (3d Cir. 2019) (citing *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 691-95 (1978)). Liability will be imposed when the policy or custom itself violates the Constitution or when the policy or custom, while not unconstitutional itself, is the "moving force" behind the constitutional tort of one its employees. *Thomas v. Cumberland Cty.*, 749 F.3d 217, 222 (3d Cir. 2014) (citation omitted); *Polk Cty. v. Dodson*, 454 U.S. 312 (1981).

A governmental policy or custom can be established by showing either that the decisionmaker possessing final authority to establish a municipal policy did so by issuing an official statement of policy or that a governmental custom developed when the official acquiesced to a course of conduct such that it operated as law. *Jiminez v. All Am.*

---

[26] Resp. at 15.

*Rathskeller, Inc.*, 503 F.3d 247, 250 (3d Cir. 2007). An "official policy" is created not only by formal rules but also when the "government's authorized decisionmakers" make the "decision to adopt [a] particular course of action." *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986). A "custom" exists when a "widespread practice" is "so permanent and well settled as to constitute a custom or usage with the force of law." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (internal citations omitted).

The plaintiff proceeds on a "single incident theory." She argues that the need for training Bashore was "so obvious" and his lack of training "so likely" to result in constitutional violations that the municipality is liable for failing to train him.[27] The Second Amended Complaint alleges that West Goshen Township "failed to properly train its employees, including Defendant Bashore, to manage employees, township workers, discipline, vet, manage, supervise, and investigate the actions of its Township departments, which was a moving force in the deprivation of John David Woodward, Jr.'s constitutional rights and life."[28] The plaintiff asserts that "but for" the Township's failure to train Bashore, Woodward would not have died.[29]

The Township argues that the plaintiff's allegations are insufficient to plausibly show that a violation of Woodward's federal rights was a "highly predictable

[27] Resp. at 16.

[28] Second Am. Compl. ¶ 150.

[29] Resp. at 18.

consequence" of the Township's alleged failure to train Bashore.[30] This failure, it contends, dooms a claim based on the single-incident theory of municipal liability.[31]

The single-incident theory of municipal liability for failure to train applies in a "narrow range of circumstances." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 409 (1997). Those circumstances have not been alleged here.

The plaintiff alleges that the county failed to train or supervise Bashore, leading him to "wrongfully and without investigation place Mr. Woodward on unpaid leave."[32] She adds that because the Township failed to supervise Bashore, he "wrongfully threaten[ed] employees, such as Mr. Woodward, with jail."[33] She has not alleged facts to support an inference that a constitutional violation would "predicably" occur absent training to prevent it. She has not alleged facts showing that the municipality knew or that it was "so obvious" that disciplined workers would commit suicide and its failure to train or supervise would have prevented the harm. *See Canton,* 489 U.S. at 390 (ruling that the single-incident theory of liability is possible only when "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights."). The plaintiff's allegations do not permit a plausible inference that the municipality's failure to train Bashore "predictab[ly]" resulted in the violation of his constitutional rights.

---

[30] Reply Br. in Supp. of Mot. to Dismiss Second Am. Compl. at 4, ECF No. 17 ["Reply"].

[31] *Id.* (citing *Berg v. Cty. of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).

[32] Second Am. Compl. ¶¶ 151-155.

[33] *Id.* ¶ 151.

The Second Amended Complaint fails to state a claim establishing municipal liability against West Goshen Township. Therefore, we shall grant the motion to dismiss Count VI.[34]

## Conclusion

The plaintiff has alleged sufficient facts, albeit barely, to allow the state-created danger cause of action to proceed to discovery. She has not stated a cause of action for municipal liability. Therefore, we shall grant the motion to dismiss Count VI and deny it as to Counts V, VII, and VIII.

[34] The remaining counts, Count VII for Wrongful Death and Count VIII for Survival, do not state independent claims, but seek damages. They are predicated on the state-created danger and municipal liability claims.